____ FILED   ___ ENTERED
____ LOGGED   _____ RECEIVED

8:49 am, Jan 18 2023
AT  BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR SEARCH WARRANTS | Case No. 1:22-mj-03738-JMC _____ |

### AFFIDAVIT IN SUPPORT OF SEARCH WARRANTS

I, Special Agent ("SA") Brandon Woods of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), being duly sworn, depose and state as follows:

### INTRODUCTION

1. This affidavit is made in support of applications under Rule 41 of the Federal Rules of Criminal Procedure for the following search warrants:

2. I seek authorization for the forensic examination of one laptop computer and six cellular telephones, further described below and in Attachment A, and hereafter collectively referred to as the "**Subject Devices**." The laptop computer is currently in the possession of the Baltimore Police Department ("BPD") in Baltimore, Maryland. The six cellular telephones are currently in the possession of the ATF in Baltimore, Maryland.

| SUBJECT DEVICE | SUBJECT | HEREINAFTER |
|---|---|---|
| HP Laptop Computer<br>Serial Number: 5CD5033W71 | Ronald TUBONGBANUA | **Subject Device 1** |
| Motorola Cellphone with Silver Case | Ronald TUBONGBANUA | **Subject Device 2** |
| Black Cellphone (Unknown Manufacturer) with Screen Damage | Ronald TUBONGBANUA | **Subject Device 3** |

| | | |
|---|---|---|
| Black Motorola Cellphone<br><br>International Mobile Equipment Identifier (IMEI): 351394595823974 | Ronald TUBONGBANUA | **Subject Device 4** |
| Black Samsung Cellphone | Ronald TUBONGBANUA | **Subject Device 5** |
| Black Cellphone (Unknown Manufacturer) with Cracked Screen | Ronald TUBONGBANUA | **Subject Device 6** |
| Black LG Cellphone | Ronald TUBONGBANUA | **Subject Device 7** |

3. The applied for warrants would authorize members of the ATF, or their authorized representatives, to examine the **Subject Devices** for the purpose of identifying and seizing electronically stored data, further described in Attachment B.

4. Based on the facts set forth in this affidavit, I respectfully submit that there is probable cause to believe that the **Subject Devices** contain evidence of criminal activity, namely, possession of a firearm and ammunition by a prohibited person, in violation of 18 U.S.C. § 922(g); possession with the intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a); and possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c); collectively, the "**Subject Offenses**".

5. Because this affidavit is being submitted for the limited purpose of establishing probable cause for the requested search warrants, I have not included each and every fact known to me concerning the entities, individuals, and the events described in this affidavit. Rather, I have set forth only those facts that I believe are necessary to establish probable cause. I have not, however, excluded any information known to me that would defeat a determination of probable cause. The information contained in this affidavit is based upon my personal knowledge, my

review of documents and other evidence, and my conversations with other law enforcement officers and other individuals. All conversations and statements described in this affidavit are related in substance and in part unless otherwise indicated.

## AFFIANT BACKGROUND

6. I am a Special Agent with the ATF. As such, I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516.

7. I have been a Special Agent with the ATF since May 2018. I graduated from the Department of Homeland Security Criminal Investigator Training Program, as well as the ATF National Academy SA Basic Training program, where I received training in the enforcement of federal firearms, arson, and explosive laws. I am currently assigned to the Baltimore Field Division, Baltimore Group II, which is detailed to the Baltimore OCDETF Strikeforce. I have received specialized training regarding the investigation and enforcement of federal firearm and narcotics laws and have conducted investigations regarding individuals involved in illegal firearm and narcotics activity, many of which resulted in arrests for firearm and narcotics violations and other violent crimes, as well as searches and seizures of individuals and property.

8. I have received specialized training regarding, and have personally participated in, various types of investigative activities, including, but not limited to, the following: (a) physical surveillance; (b) the debriefing of defendants, witnesses, informants, and other individuals who have knowledge concerning violations of federal firearms and controlled substance laws; (c) undercover operations; (d) the execution of search warrants; (e) the consensual monitoring and recording of conversations; (f) electronic surveillance through the use of pen registers and trap

and trace device; (g) the court-authorized interception of both wire and electronic communications (i.e., Title III wiretaps); and (h) the handling, maintenance, and examination of evidence to include wireless phones and computers.

9. Throughout my training and experience, I have become familiar with the manner in which narcotics traffickers will commonly use violence to further and protect their enterprise. I am familiar with the manners in which illegal drugs are transported, stored, and distributed; the methods of payment for such drugs; the possession and use of firearms in connection with the trafficking of such drugs; and the manner in which narcotics traffickers store and conceal the proceeds of their illegal activities.

## USE OF ELECTRONIC DEVICES BY DRUG TRAFFICKERS

10. Based upon my training and experience, my conversations with other agents, and my participation in this and other investigations, I know the following about the use of cellular telephones, and other electronic devices, by drug traffickers:

    a. Drug traffickers often use cellular telephones and other electronic devices, to communicate with customers and/or co-conspirators via voice calls, text messages, and FaceTime calls. These communications are often stored on a drug trafficker's cellular telephones and other electronic devices;

    b. Drug traffickers often keep cellular telephones, other electronic devices, and documents referencing the possession of those devices in their residences, automobiles and on their persons;

    c. Drug traffickers often use multiple cellular telephones, and other electronic devices, including individual contacts used for particular customers or co-conspirators;

    d. Drug traffickers often use cellular telephones to maintain telephone number "contact lists" of customers and/or co-conspirators;

    e. Drug traffickers often carry firearms to protect themselves and their drug proceeds and to enforce drug debts;

    f. Drug traffickers often use the digital cameras on their cellular telephones to take pictures of themselves with their co-conspirators, holding handguns or other weapons, or

handling suspected controlled substances or proceeds of drug trafficking. These pictures are often stored on a drug trafficker's cellular telephone. I know that the **Subject Devices** are equipped with cameras; and

       g. Drug traffickers often keep logs of drug debts owed by customers or to suppliers, often referred to as an "owe sheet" or "tally sheet." These logs can be kept on cellular telephones or other electronic devices. Additionally, drug traffickers may attempt to launder drug proceeds by intermingling them with legitimate funds, evidence of which may be stored electronically on cellular telephones and other electronic devices.

## PROBABLE CAUSE

11. On November 5, 2022, at approximately 1:34 p.m., BPD officers responded to reports of a shooting at 3818 Pennington Avenue. Upon arrival, officers observed Ronald TUBONGBANUA suffering from a gunshot wound to his lower left leg. TUBONGBANUA advised officers that he was in the rear of his home, 3818 Pennington Avenue, when he was shot by an unknown black male.

12. Officers located the crime scene in the rear alley adjacent to TUBONGBANUA's residence. The crime scene consisted of suspected blood near TUBONGBANUA's unlocked shed in the rear of his residence, a bullet fragment in the alley, a 9mm shell casing in the alley, a .40 caliber shell casing in the rear yard, an empty firearm holster in a nearby trashcan, and a bullet fragment in the rear yard of 3818 Pennington Avenue.

13. Officers conducted a protective sweep of the residence and the unlocked shed to search for suspects and/or victims. During the protective sweep, officers observed, in plain view, suspected blood and unfired rounds of ammunition in the shed. The unfired rounds matched the .40 caliber shell casing located in the rear yard. Officers located suspected blood and a makeshift tourniquet on the front porch of the residence. Finally, officers located suspected blood along the stairwell inside of the residence. Investigators believe, based on the different caliber shell casings recovered from the crime scene, that two firearms were fired. Investigators suspect

TUBONGBANUA fired a .40 caliber firearm based on the location of the .40 caliber shell casing in the rear yard and the matching .40 caliber ammunition located in TUBONGBANUA's shed. Further, investigators believe, based on examination of TUBONGBABUA's clothing and the gunshot wound, that the gunshot wound was self-inflicted.

14. Officers secured the residence and obtained a search warrant, signed by the Honorable Theresa Morse of the Baltimore City District Court. At approximately 6:45 p.m., officers executed the search warrant at 3818 Pennington Avenue. Officers recovered the .40 caliber Smith & Wesson shell casing, the bullet fragment, and a left-handed firearm holster from the rear yard of the residence. Officers recovered suspected heroin, a gun cleaning kit, a scale with suspected heroin residue, a pill press with suspected heroin residue, eleven .556 mm rounds of ammunition, an AR-15 lower receiver jig, a laser device for a firearm, a box containing twenty-eight 9mm rounds of Sig Sauer ammunition, four .40 caliber Smith & Wesson rounds of ammunition, a box containing fourteen 9mm rounds of Winchester ammunition, an SS80 Polymer80 lower receiver building kit, three rounds of 9mm ammunition, one projectile, **Subject Devices 1 and 2**, a handwritten paper containing parts and labor pricing for firearm production, a ledger book containing parts and labor pricing for firearm production, body armor, and a drill press from the shed in the rear yard of the residence. Officers recovered the makeshift tourniquet from the front porch of the residence. Officers recovered one .40 caliber round of ammunition from the rear bedroom on the second floor of the residence. Finally, officers recovered a notebook and ledger containing information regarding the building and sale of AR-15 rifles and **Subject Devices 3 through 7** from the living room of the residence.

15. Investigators reviewed the ledgers and notebooks recovered and located a note reading, "Tina bill $500, Cocaine $1018.00 (zip), Stamp 30's perks $525.00, Molly $80.00."

Another note was titled, "AR-15 build project," and listed parts and pricing. Further down the page was another note that read, "Options for my next AR build," followed by a list of parts and pricing. Based on my training, knowledge, and experience, I believe the notes are further proof that TUBONGBANUA is engaged in the sale of narcotics and the manufacturing of firearms.

16. On November 12, 2022, investigators interviewed TUBONGBANUA in reference to the November 5th shooting. TUBONGBANUA told investigators that he possessed a privately made firearm.[1] He advised that on November 5th he was in the shed in the rear of his residence working on the privately made firearm. While removing the magazine, TUBONGBANUA dropped the firearm. He advised that he shot himself while trying to catch the firearm. TUBONGBANUA also admitted to possessing the suspected narcotics recovered from the shed. TUBONGBANUA acknowledged that he is prohibited from possessing firearms and ammunition due to a prior conviction.

17. Based on my training, knowledge, and experience, I believe that the ammunition recovered from TUBONGBANUA's residence was manufactured outside the state of Maryland and traveled in interstate commerce prior to its recovery in Maryland on November 5, 2022.

18. I know based on a review of TUBONGBANUA's criminal record that, prior to the events outlined in this affidavit, TUBONGBANUA was convicted of a crime punishable by more than one year of incarceration. Accordingly, at the time TUBONGBANUA possessed the ammunition on November 5, 2022, he was prohibited from possessing the ammunition and knew or should have known that he had been convicted of a crime punishable by more than one year imprisonment.

---

[1] Investigators did not recover a privately made firearm during the execution of the search warrant at TUBONGBANUA's residence.

19. BPD took custody of the **Subject Devices** on November 5, 2022. ATF took custody of **Subject Devices 2 through 7** on December 16, 2022. **Subject Device 1** remains in BPD custody. Since BPD took custody of the **Subject Devices** on November 5, 2022, neither BPD nor ATF have been made aware of any attempts by TUBONGBANUA to recover the **Subject Devices**.

## CONCLUSION

20. Based upon the information set forth in this affidavit, I respectfully submit probable cause exists to believe that the **Subject Devices** will contain evidence of violations of federal law, to include possession of a firearm and ammunition by a prohibited person, in violation of 18 U.S.C. § 922(g); possession with the intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a); and possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c).

WHEREFORE, in consideration of the facts presented, I respectfully request that this Court issue search warrants for the **Subject Devices**, further described in Attachment A, for the purpose of seizing the items particularly described in Attachment B.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

BRANDON WOODS  Digitally signed by BRANDON WOODS
Date: 2022.12.28 15:31:28 -05'00'

Special Agent Brandon Woods
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on this __29th__ day of December 2022.

The Honorable J. Mark Coulson
United States Magistrate Judge



## ATTACHMENT A

### Property to Be Searched

This warrant authorizes the members of the ATF, or their authorized representatives, including, but not limited to, other law enforcement agents assisting in the above-described investigation, to search the following "**Subject Devices**":

| SUBJECT DEVICE | SUBJECT | HEREINAFTER |
|---|---|---|
| HP Laptop Computer<br><br>Serial Number: 5CD5033W71 | Ronald TUBONGBANUA | **Subject Device 1** |
| Motorola Cellphone with Silver Case | Ronald TUBONGBANUA | **Subject Device 2** |
| Black Cellphone (Unknown Manufacturer) with Screen Damage | Ronald TUBONGBANUA | **Subject Device 3** |
| Black Motorola Cellphone<br><br>International Mobile Equipment Identifier (IMEI): 351394595823974 | Ronald TUBONGBANUA | **Subject Device 4** |
| Black Samsung Cellphone | Ronald TUBONGBANUA | **Subject Device 5** |
| Black Cellphone (Unknown Manufacturer) with Cracked Screen | Ronald TUBONGBANUA | **Subject Device 6** |
| Black LG Cellphone | Ronald TUBONGBANUA | **Subject Device 7** |

## ATTACHMENT B

### Items to be Seized

All records contained in the items described in Attachment A, which constitute evidence of violations of the **SUBJECT OFFENSES**, including, but not limited to, that outlined below:

1. Contact logs that refer or relate to the user of any and all numbers on the **SUBJECT DEVICES**.

2. Call logs reflecting date and time of received calls.

3. Any and all digital images and videos of persons associated with this investigation.

4. Text messages to and from the **SUBJECT DEVICES** that refer or relate to the crimes under investigation.

5. Records of incoming and outgoing voice communications that refer or relate to the crimes under investigation.

6. Voicemails that refer or relate to the crimes under investigation.

7. Voice recordings that refer or relate to the crimes under investigation.

8. Any data reflecting the **SUBJECT DEVICES'** location.

9. Contact lists.

10. Any and all records related to the location of the user(s) of the **SUBJECT DEVICES**.

11. For the **SUBJECT DEVICES**:
    a. Evidence of who used, owned, or controlled the device at the time the things described in these warrants were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;
    b. evidence of software that would allow others to control the device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;
    c. evidence of the lack of such malicious software;
    d. evidence of the attachment to the **SUBJECT DEVICES** of other storage devices or similar containers for electronic evidence;
    e. evidence of counter forensic programs (and associated data) that are designed to eliminate data from the **SUBJECT DEVICES**;
    f. evidence of the times the **SUBJECT DEVICES** were used;

g. passwords, encryption keys, and other access devices that may be necessary to access the **SUBJECT DEVICES**;
h. documentation and manuals that may be necessary to access the **SUBJECT DEVICES** or to conduct a forensic examination of the **SUBJECT DEVICES**; and,
i. contextual information necessary to understand the evidence described in this attachment.

With respect to the search of any of the items described above which are stored in the form of magnetic or electronic coding on computer media or on media capable of being read by a computer with the aid of computer-related equipment (including CDs, DVDsS, thumb drives, flash drives, hard disk drives, or removable digital storage media, software or memory in any form), the search procedure may include the following techniques (the following is a non-exclusive list, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein, while permitting government examination of all the data necessary to determine whether that data falls within the items to be seized):

1. surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for markings it contains and opening a drawer believed to contain pertinent files);
2. "opening" or cursorily reading the first few "pages" of such files in order to determine their precise contents;
3. "scanning" storage areas to discover and possible recover recently deleted files;
4. "scanning" storage areas for deliberately hidden files; or
5. performing key word searches or other search and retrieval searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation.

If after performing these procedures, the directories, files or storage areas do not reveal evidence of the specified criminal activity, the further search of that particular directory, file or storage area, shall cease.

With respect to the search of the information provided pursuant to this warrant, law enforcement personnel will make reasonable efforts to use methods and procedures that will locate and expose those categories of files, documents, communications, or other electronically stored information that are identified with particularity in the warrant while minimizing the review of information not within the list of items to be seized as set forth herein, to the extent reasonably practicable.

If the government identifies any seized communications that may implicate the attorney-client privilege, law enforcement personnel will discontinue its review and take appropriate steps to segregate all potentially privileged information so as to protect it from substantive review. The investigative team will take no further steps regarding any review of information so segregated, absent further order of the court. The investigative team may continue to review any information not segregated as potentially privileged.